MANLEY v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 72621. Argued March 5, 1985 (Calendar No. 8). Decided
May 29, 1986.

 Kenneth A. Manley and Betty D. Manley, individually and as
next friends of John Manley, their son, brought an action in
the Oakland Circuit Court against the Detroit Automobile
Inter-Insurance Exchange, their no-fault insurer, seeking bene-
fits for the care of John in their home. John had been so
severely injured in an automobile accident that he was unable
to care for himself and required custodial care. When the
Manleys removed John from a medical care facility because of
dissatisfaction with the treatment John was receiving and
undertook care within their home, DAIIE notified them that
benefits would be reduced and that no provision would be made
for private nursing care. The court, Steven N. Andrews, J.,
entered a preliminary injunction requiring DAIIE to pay certain
costs for room and board and nursing care for John, and, after
trial, entered a declaratory judgment for the plaintiffs on a
special jury verdict, requiring the defendant to pay amounts
per diem for John's future care for room and board and for
unskilled nursing, the full amount of expenses for modification
of the Manley home which had been made to better accommo-
date John, an amount for past services performed by the
plaintiffs before commencement of the action, and attorney fees
and costs attributable to the plaintiffs' nursing service claim.
The court also directed a verdict for the defendants on the

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-368, 389, 390.

Compensability, under automobile no-fault or personal protection
insurance, of physical care services afforded injured insured by
spouse or other person in close relation. 28 ALR4th 700.

Who is "member" or "resident" of same "family" or "household"
within no-fault or uninsured motorist provisions of motor vehicle
insurance policy. 96 ALR3d 804.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

See also the annotations in the ALR3d/4th Quick Index under No-
fault Insurance.

claim of damages for mental anguish. An injunction was entered requiring DAIIE to pay costs of room and board and unskilled nursing care actually incurred and substantiated pending appeal. The Court of Appeals, BRONSON, P.J., and J. H. GILLIS and MACKENZIE, JJ., set aside the per diem awards for room and board and unskilled nursing care and for attorney fees and costs and remanded the case for a new trial on the issues of room and board and whether expenses for room and board and unskilled nursing care during the period covered by the preliminary injunction were actually incurred. The Court also ruled that entry of the judgment by the trial court for room and board and unskilled nursing care expenses, in futuro, without regard to whether such expenses actually would be incurred, was error. It additionally directed the modification of the declaratory judgment to include a twelve-percent penalty interest award for the plaintiffs (Docket No. 64882). The plaintiffs appeal.

In an opinion by Justice LEVIN, joined by Chief Justice WILLIAMS and Justices BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

The award of certain amounts per diem for room and board and nurse's aides should not have been set aside. A new trial of those issues is not required. The judgment of the trial court, including the declaratory judgment, is reinstated, subject to modifications providing that the costs for unskilled nursing services are payable up to the maximum awarded by the trial court upon submission of substantiation of charges from established nursing companies, that a twelve-percent penalty interest award be entered for the plaintiffs, and that an accounting between the parties be made regarding the amounts owing after taking into consideration amounts paid pursuant to injunctions entered by the trial court. Also reinstated is the award of attorney fees and costs incurred by the plaintiffs in establishing their unskilled nursing service claim.

1. A no-fault insurer is required to pay only necessary allowable expenses incurred by an insured. However, where a dispute arises between an insurer and an insured, a trial court is not precluded from entering a judgment declaring that an expense is both necessary and allowable and the amount that will be allowed. Such a declaration does not oblige a no-fault insurer to pay for an expense until it is actually incurred.

2. The defendant is not relieved of the obligation to pay no-fault benefits for products, services, and accommodations provided for John Manley which, if he were an adult, would be allowable expenses under the no-fault act. Although a parent

might be obliged to pay such expenses as necessaries were there no no-fault act, under the act the question is not whether someone other than the insurer might also be obligated to pay under some other provision or rule of law, but whether the expense is allowable.

3. The determination by the jury that John required unskilled nursing care in addition to the services provided by the Manleys for as much as sixteen hours per day and the cost of such care, whether at home or at an extended care facility, was fully justified on the record. The form of the verdict did not deprive the defendant of a trial by jury on the issue whether the expenses actually were incurred; there was no dispute on that issue. The only dispute was whether John needed unskilled nursing care and whether the charge for the care was reasonable. The jury found that the service was needed and that the charge was reasonable.

4. The sense of the jury's verdict and of the declaratory judgment is that the defendant is obliged to pay the necessary costs of unskilled nursing care and room and board. Either party is entitled to a redetermination from time to time of the amounts allowable for unskilled nursing care and for room and board, but only upon a substantial change in the facts or circumstances or a change in the law.

5. The award by the trial court of attorney fees, costs, and interest was proper. The ruling by the Court of Appeals that the plaintiffs were entitled to twelve-percent penalty interest was not challenged on appeal.

Reversed and remanded.

Justice BOYLE, concurring in part and dissenting in part, stated that under the no-fault act the jury had no authority to determine a set amount for future nursing care and room and board. John Manley's actual future expenses could be far greater than the amount determined, and the no-fault system was not intended to be limited in such a manner. No comprehensive proof was presented at trial concerning specific items of expense incurred by the plaintiffs for past room and board, requiring remand for a determination whether the items were allowable expenses under the act. Remand is also required to determine the actual past expenses incurred by the plaintiffs for unskilled nursing care.

The test adopted by the Court of Appeals limiting allowable expenses for quasi-institutional home care to those expenses not as necessary to uninjured as to injured persons is unwieldy and unworkable and should be explicitly disavowed. Under the no-fault act, in order to qualify as allowable, an expense must

be reasonable, reasonably necessary, and actually incurred. The focus should be on the product, service, or accommodation provided, and not the status of the provider. An item allowable in an institutional setting is not barred merely because it is provided at home.

An award of attorney fees is improper in this case because the defendant did not unreasonably refuse to pay or delay in making required payments.

Justice ARCHER took no part in the decision of this case.

127 Mich App 444; 339 NW2d 205 (1983) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — DECLARATORY JUDGMENTS — ALLOWABLE EXPENSES.

   A no-fault insurer is required to pay only necessary allowable expenses incurred by an insured; however, where a dispute arises between an insurer and an insured, a trial court is not precluded from entering a judgment declaring that an expense is both necessary and allowable and the amount that will be allowed (MCL 500.3107; MSA 24.13107; MCR 2.605).

2. INSURANCE — NO-FAULT — ALLOWABLE EXPENSES.

   A no-fault insurer must pay allowable expenses regardless of whether someone other than the insurer might also be obligated to pay such expense under a provision or rule of law other than the no-fault act (MCL 500.3107; MSA 24.13107).

3. INSURANCE — NO-FAULT — ALLOWABLE EXPENSES — CHILD BENEFICIARIES.

   A no-fault insurer is not relieved of the obligation to pay no-fault benefits for products, services, and accommodations where the injured person is a child if the expenses would be allowable if the injured person were an adult (MCL 500.3107; MSA 24.13107).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY BOYLE, J.

4. INSURANCE — NO-FAULT — ALLOWABLE EXPENSES.

   *A test which limited allowable expenses under the no-fault act for quasi-institutional home care of a person injured in an automobile accident to expenses determined to be not as necessary to uninjured as to injured persons is unwieldy and unworkable and should be explicitly disavowed; under the no-fault act, in order to qualify as allowable, an expense must be reasonable, reasonably necessary, and actually incurred; the focus should be on the product, service, or accommodation*

*provided, and not the status of the provider, and an item
allowable in an institutional setting is not barred merely
because it is provided at home (MCL 500.3107[a]; MSA
24.13107[a]).*

*Moore, Sills, Poling & Wooster, P.C.* (by *Randall
J. Gillary*), for the plaintiffs.

*Condit, McGarry & Schloff, P.C.* (by *Richard P.
Condit*), for the defendant.

Amici Curiae:

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Donald S. Young*) for Michigan Catastrophic
Claims Association.

*Glime, Daoust, Wilds, Rusing & LeDuc* (by *Lido
V. Bucci* and *John F. MacArthur*) for Michigan
Head Injury Alliance.

*Miller & Littman* (by *Wayne J. Miller*) for Michigan Injured Workers.

*Janet M. Allen* for Michigan Trial Lawyers Association.

*Eggenberger, Eggenberger, McKinney & Weber,
P.C.* (by *William D. Eggenberger* and *Paul D.
Hofmeister*), for State Farm Mutual Automobile
Insurance Company.

Levin, J. This appeal concerns the amounts
payable by the defendant no-fault automobile liability insurer, DAIIE, for the care at home of plaintiff John Manley, who was so severely injured in
an automobile accident that he is unable to care
for himself.

I

John Manley was injured in an automobile accident in 1974 when he was nine. The accident resulted in severe closed head injuries. As a result, John cannot talk or walk or eat with a knife and fork. He wears diapers and has the cognitive ability of a one or two-year-old child. He is confined to a bed or wheelchair and requires total care.

A

After he was released from a hospital, John was transferred to the Oakland County Medical Care Facility where he lived for six years, from August, 1974, to late summer, 1980. One of John's parents, plaintiffs Kenneth and Betty Manley, visited him daily and assisted in his care. Betty Manley would feed him lunch and dinner and accompany him on walks, John in his wheelchair. The Manleys observed that John received intramuscular injections of behavior-control and other drugs and that he was often restrained in bed or tied to a wall. At times, it would take five nurse's aides to hold John down for an injection. There were a number of injections daily, and his buttocks became so sore that it became necessary to inject the drugs in his legs. In 1978, John removed a tube from the nose of another patient, and the director of the OCMCF ordered around-the-clock, private-duty, unskilled nursing care to prevent John from injuring other patients or himself.

DAIIE paid OCMCF $78 per day for room and board, and over $120 per day for sixteen hours of unskilled nursing care. Such private-duty nursing care was not required during the day when John

was at a school, or on weekends that the Manleys took John home.[1]

John's parents became dissatisfied with the care that John was receiving at OCMCF. In 1979, they contracted with a builder to have their home modified to better accommodate John at a cost of approximately $19,000.

For a number of years, Mrs. Manley had been bringing food from home for John's lunch and dinner because he was not eating the food provided by OCMCF. In December, 1979, she was prevented from bringing the food to John, but this was resolved by her bringing the food to the kitchen which would then be delivered to his bedside.

School ended in June, 1980, and John has not since returned to school. Shortly after school ended, John was examined by a dentist who insisted that there was no need to give John sedation in advance of the examination and who struck him in the face a number of times with an instrument when he did not do as he was told. Shortly thereafter, John was taken home, and his last day at OCMCF was July 2, 1980.

It appears that unskilled nurse's aides were provided at the Manley home from July 3. An agreement was worked out between the Manleys and DAIIE to "preserve the status quo," and for DAIIE to pay the Manleys $78 plus payment for sixteen hours of nursing care per day until a decision was made concerning John's future care and the appropriate level of reimbursement. OCMCF formally discharged John on September 2, 1980.

DAIIE retained a specialist to find an appropriate

---

[1] The Manleys began bringing John home in February, 1977, but he did not stay home overnight until Christmas, 1978. Sometime thereafter, the Manleys began bringing John home regularly from Saturday morning until Sunday evening.

facility for John. She recommended Warren Village Nursing Home, which charges $48 to $50 per day for room, board, and nursing care. Private nursing care for John was not contemplated.[2]

DAIIE notified the Manleys that the benefit payments to them would be reduced to $48 per day effective December 1, 1980, with no separate provision for private nursing care.

B

The Manleys commenced this action and obtained a preliminary mandatory injunction requiring DAIIE to pay them $78 per day for room and board and for the cost of sixteen hours per day private nursing service.

After a jury trial, which commenced in December, 1981, the circuit court entered a declaratory judgment on a special verdict requiring DAIIE to pay the Manleys (i) $30 per day for room and board, and $128 (sixteen hours × $8) per day for unskilled "sitter or nurse's aide" "as long as John Manley is cared for at the home of his parents" "or until further order of this Court," (ii) the full amount of the home modification expenses, $19,087.26, (iii) $12,000 for "past services performed" by the Manleys, and (iv) in a separate order, $15,000 for attorney fees and $838.23 for costs "attributable to Plaintiffs' nursing service claim."

The judgment further provided that DAIIE was to receive credit for the amounts that it had paid pursuant to the preliminary mandatory injunction entered shortly after the commencement of this action. That injunction was dissolved. Subsequently, another mandatory injunction was en-

---

[2] The staff to patient ratio (four to one) was the same at both OCMCF and Warren Village.

tered "pending appeal," requiring DAIIE to pay the Manleys $30 per day for "what is commonly referred to as room and board" and the costs incurred in providing sixteen hours per day of unskilled nursing care up to a maximum of $128 per day, provided that bills to substantiate the charges from established nursing companies were submitted to DAIIE.

C

The Court of Appeals set aside the awards of $30 per day for room and board and $128 per day for nurse's aides and the award of $15,000 for attorney fees plus costs, and remanded the case for a new trial "on the issues of room and board and whether expenses for room and board and care by nurse's aides during the period of the preliminary injunction were [actually] incurred."[3] The Court of Appeals also ruled that the trial court had erred in entering a declaratory judgment for the daily amounts awarded for room and board and nurse's aides because such a declaration in futuro was "without regard to whether such expenses were actually incurred."[4]

---

[3] *Manley v DAIIE,* 127 Mich App 444, 462-463; 339 NW2d 205 (1983).

[4] *Manley,* n 3 *supra,* p 451.

The Court of Appeals additionally ruled that the Manleys were entitled to twelve percent "penalty interest beginning 30 days after evidence was introduced at the trial constituting reasonable proof of the fact and amount of the loss and continuing until defendant paid the benefit at issue." *Id.,* p 461.

Section 3142 of the no-fault act provides that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained," and that "[a]n overdue payment bears simple interest at the rate of 12% per annum." MCL 500.3142; MSA 24.13142.

Neither the Manleys nor DAIIE has challenged in this Court the decision of the Court of Appeals on the accrual of interest pursuant to § 3142, and we, therefore, have not reviewed that portion of the decision of the Court of Appeals.

The Court of Appeals additionally ruled that the trial court did not err in directing a verdict for DAIIE on the Manleys' claim for damages for mental anguish.

The Court of Appeals further concluded that there was ample evidence to support the verdict that the home modifications were an allowable expense and that the Manleys had reasonably expended $19,000 therefor; we have not been asked to review that award.

The Court of Appeals did not consider whether the $12,000 awarded for services performed by the Manleys was an allowable expense and did not disturb that portion of the judgment; again, we have not been asked to review that award.[5]

D

We agree with the Court of Appeals, for the reasons stated in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), that the trial court properly directed a verdict on the mental anguish issue.[6]

We disagree with the Court of Appeals conclusion that there should be a new trial on the issues of room and board and nurse's aides, and reinstate the judgment entered by the trial court on those issues, including the declaratory judgment which shall, however, be modified to provide, as set forth in the injunction pending appeal, that nursing services are payable up to a maximum of $128 per day, upon submission to DAIIE of bills to substanti-

---

[5] The Court of Appeals ruled that recovery for home modifications and for past services performed by the Manleys was not barred by the one-year limitation provided in MCL 500.3145; MSA 24.13145. In this Court, DAIIE does not contend that the Court of Appeals erred in so ruling, and we have not, therefore, reviewed this determination of the Court of Appeals.

[6] See also *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985).

ate the charges from established nursing companies. We also reinstate the trial court's order awarding attorney fees and costs incurred by the Manleys in establishing their unskilled nursing service claim.

## II

The principal question presented for review in this Court is whether the Court of Appeals erred in setting aside the provisions of the judgment entered pursuant to the special verdict awarding $30 per day for room and board and $128 per day for nurse's aides.

### A

The Court of Appeals held that a new trial was required on the amount recoverable for room and board because it was apparent that the parties had "mistaken[ly]"[7] used the term "room and board" to include products, services, and accommodations only some of which were, and others of which were not, allowable expenses within the meaning of § 3107 of the no-fault automobile liability act. Section 3107 provides that no-fault benefits are payable for

[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation. [MCL 500.3107; MSA 24.13107.]

The Court of Appeals declared that "[p]roducts, services, or accommodations which are as neces-

[7] *Manley,* n 3 *supra,* p 455.

sary for an uninjured person as for an injured person are not 'allowable expenses' " and, therefore, because "food is as necessary for an uninjured person as for an injured person," food "is not ordinarily an 'allowable expense' for an injured person cared for at home, unless the nature of the injury makes a special diet reasonably necessary."[8] Because the parties did not offer proofs concerning the cost of providing at home the products, services, and accommodations covered by the OCMCF $78 per day charge or by the Warren Village $48 per day charge, the Court of Appeals was "unable to determine what allowable expenses, if any, are included within plaintiffs' recovery for room and board"; and for that reason the issue must be retried.[9]

B

The briefs of the parties and of a number of the amici curiae in this Court have focused largely on the question whether the Court of Appeals correctly decided that the term "allowable expenses" as used in § 3107 does not include products, services, or accommodations—such as food, shelter, utilities, and clothing—which are as necessary for an uninjured person as for an injured person. DAIIE and supporting amici curiae contend that the term "products, services, and accommodations" means products, services, or accommodations respecting an injured person's medical care, recovery, or rehabilitation, and does not include food, shelter, utilities, and clothing, except when provided in an institutional setting where the cost of providing such maintenance is, to paraphrase the Court of Appeals, an "extraordinary expense not

[8] *Manley,* n 3 *supra,* p 454.
[9] *Id.,* p 455.

analogous to the cost" of providing such maintenance at home.[10]

The Manleys and their supporting amici curiae contend that where the injured person cannot take care of himself and institutional care would be required if a family member was not willing to take the injured person into his home, a no-fault insurer should be required to pay for the cost of maintenance in the home in an amount not exceeding what it would cost to provide such maintenance in an institution. They argue that the family should be encouraged to return an injured person to his home and should not be discouraged from doing so by requiring the family to pay expenses of maintenance which would otherwise be paid by the no-fault insurer if the injured person remained in an institution.

DAIIE and supporting amici curiae respond that to construe the no-fault act as including in "allowable expense" the cost of providing food, shelter, utilities, clothing, and other such maintenance expense of seriously injured persons would convert an obligation intended by the Legislature to be limited essentially to medical expense into a general welfare program for the benefit of seriously injured victims of automobile accidents, greatly adding to the cost of no-fault insurance.

III

It appears on review of the record made in the trial court and of the briefs in the Court of Appeals that the question whether food, shelter, utilities, clothing, and other such maintenance expenses are an allowable expense when the injured person is cared for at home was not presented in the trial court or, indeed, argued in the Court of

---

[10] *Manley,* n 3 *supra,* p 454.

Appeals. We do not address that question. The opinion of the Court of Appeals on that question shall not be regarded as of precedential force or effect.

### A

Before the trial, DAIIE moved for partial summary judgment on the ground that the Manleys could not recover for room and board because, as parents of a minor son,[11] they are legally obligated to maintain John while he resides in their home. The trial court denied the motion. The Court of Appeals affirmed. We agree with the Court of Appeals that "[t]he exception for which [DAIIE] argues would engulf many of the expenses which the statute expressly requires the insurer to pay," such as medical care. A no-fault insurer is not relieved of the obligation to pay no-fault benefits for products, services, and accommodations provided a child which, if the injured person were an adult, are allowable expenses within the meaning of § 3107. Although the parent of the child might be obliged to pay for such products, services, or accommodations as "necessaries essential to the health and comfort of the child"[12] if there was not a no-fault act, there is a no-fault act. Under that act, the question is whether the product, service, or accommodation is an allowable expense, not whether someone else might also be legally obligated to pay such expense under some other provision or rule of law.

### B

The disputed factual issues that were tried were the amount payable to the Manleys for "room and

[11] John was seventeen on December 1, 1980.
[12] *Manley,* n 3 *supra,* p 453.

board" and whether private duty nurse's aides were additionally necessary for John's care and, if so, the amount payable therefor.

Evidence was offered of the $78 daily charge for room and board at OCMCF and of the $48 to $50 daily charge at Warren Village and of the $8 per hour currently charged by providers of unskilled nursing services.

DAIIE contended that $50 per day was more than adequate to cover all the costs of maintaining John at home, including nurse's aides, while the Manleys sought $78 per day plus $128 for nurse's aides. DAIIE argued that the Manleys had been unable, on cross-examination, to provide information concerning the cost of running their household, but suggested to the jury that although the Manleys hadn't "prove[d] a nickel" there was obviously "some room and board in having John there" and suggested a "figure of somewhere between $10 and $11 a day." As for nurse's aides, it was suggested that no more than $38 to $40 per day be allowed because Warren Village would provide room and board, including unskilled nursing care, for $50 per day. The jury was not asked to exclude from room and board the cost of food, shelter, utilities, clothing, or other maintenance at home; on the contrary, it was asked to limit the amount provided therefor to $10 to $11 per day. Nor was there objection to the use of the term "room and board" in the form of the special jury verdict.[13]

C

The underlying factual dispute was whether

---

[13] We agree with the trial court that the evidence of the $78 daily charge by OCMCF and the $48 to $50 daily charge by Warren Village made a prima facie case which adequately supports the jury verdict finding that $30 was the daily cost of providing "room and board" as the parties used that term in trying this lawsuit.

John required private duty nurse's aides in addition to the services the Manleys provided. There was extensive testimony regarding John's incapacity, the services provided by the Manleys and by the nurse's aides, and of the need, cost, and value of such services. The record fully justifies the jury's determination that John required, whether at home or at an extended care facility, private duty, unskilled nursing care for as much as sixteen hours per day at a cost of $8 per hour.

D

Nor do we agree with the Court of Appeals that the form of the verdict deprived DAIIE of "a trial by jury on the issue whether the [room and board and nurse's aide] expenses were [actually] incurred."[14] There was no dispute whether such expenses were actually incurred.

The disputed issues were the need for private duty, unskilled nursing care and what constituted a reasonable charge for room and board. The jury's verdict said in effect that $30 per day was a reasonable charge for the cost of providing room and board during the approximate one-year period between the entry of the temporary mandatory injunction in December, 1980, and the conclusion of the trial in December, 1981.

Turning to the $128 per day for nurse's aide, during that period DAIIE paid the providers of nursing services directly so that there could be no dispute whether the expense was actually incurred. The only dispute in that regard was whether John needed private duty, unskilled nursing care and, if so, whether the $8 per hour charge for sixteen hours per day was reasonable. The

---

[14] *Manley*, n 3 *supra*, p 458.

jury, by its verdict, found that such service was required and that the charge was reasonable.[15]

---

[15] The Court of Appeals ruled that the form of the jury verdict, which asked the jury to "specify the reasonable charge" for "room and board" and, separately, for "sitter and nurse's aide" "per day" rather than asking "what is the amount of the allowable expenses incurred by plaintiff," as provided for in SJI2d 67.01, denied DAIIE "a trial by jury on the issue of whether the expenses were incurred." *Manley,* n 3 *supra,* p 458.

The pertinent sections of SJI2d 67.01 provide:

QUESTION No. 3: Did the plaintiff incur "allowable expenses" as a result of this accident, which are defined as reasonable charges for reasonably necessary products, services and accommodations for the plaintiff's care, recovery and rehabilitation?

* * *

QUESTION No. 4: If your answer to Question No. 3 is "yes," what is the amount of the allowable expenses incurred by plaintiff?

* * *

QUESTION No. 15: What is the total amount of the benefits that you have found plaintiff to be entitled to in your answers to these questions?

The jury was instructed to respond to the following questions:

QUESTION 1: Did the Plaintiffs incur any allowable expenses as the result of this accident, which are defined as reasonable charges for reasonably necessary products, services and accommodations for John Manley's care, recovery or rehabilitation?

QUESTION 2: If your answer to Question 1 is "yes," please specify which of the following products, services and accommodations are reasonably necessary for John Manley's care, recovery and rehabilitation.

   a. Room and Board              \_\_\_\_\_
   b. Sitter or Nurse's Aide      \_\_\_\_\_
   c. Home modifications        \_\_\_\_\_
   d. Services performed by Mr. and Mrs. Manley  \_\_\_\_\_

QUESTION 3: For each "yes" to Question 2, please specify the reasonable charge for that particular product, service or accommodation.

   a. Room and Board (per day).      \_\_\_\_\_
   b. Sitter or Nurse's Aide (per day).  \_\_\_\_\_
   c. Home modifications.        \_\_\_\_\_
   d. Services performed by Mr. and Mrs. Manley.  \_\_\_\_\_

DAIIE also submitted the following requested instruction which the court declined to give:

What is the total amount of the allowable expense incurred by Plaintiffs from December 1, 1980 to December 14, 1981?

E

DAIIE contends that because the no-fault act requires a no-fault insurer only to reimburse an injured person for necessary allowable expenses actually incurred,[16] the trial judge erred in entering a declaratory judgment establishing amounts payable in the future before the expense was actually incurred. The tendency of this contention is that DAIIE may relitigate factual and legal issues that have already been decided when the Manleys seek payment for expenses incurred after the date of the trial. That is neither a workable nor a sound rule of law.

While a no-fault insurer is required to pay only necessary allowable expenses actually incurred, it does not follow that when a dispute arises a trial court is precluded from entering a declaratory judgment determining that an expense is both necessary and allowable and the amount that will be allowed.[17] Such a declaration does not oblige a no-fault insurer to pay for an expense until it is actually incurred.

Subsequent to the trial, nurse's aide expense was incurred by the Manleys with established providers of nursing services which have billed the Manleys for the cost. As set forth in the mandatory injunction pending appeal, the declaratory judgment does not oblige DAIIE to pay for nurse's aides until receipt of a bill from a nursing service company. Should the Manleys pay such expense themselves, DAIIE is not obligated to reimburse

The departures from the SJI form of verdict do not justify a new trial. See *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985).

[16] See *Ouellette v Kenealy,* 424 Mich 83; 378 NW2d 470 (1985).

[17] MCR 2.605. See *Shavers v Attorney General,* 402 Mich 554, 588; 267 NW2d 72 (1978).

them until receipt of evidence of payment by the Manleys for such service.

It appears on this record that John will not regain his faculties and that some nurse's aides will probably be required for the rest of his life. The cost of nurse's aides may be more or less than the $128 per day established by the jury's verdict as the reasonable cost of such service during the year 1980-81. The sense of the jury's verdict and of the declaratory judgment is that DAIIE is obliged to pay for the necessary cost of nurse's aides.

The other category of expense, room and board, is not payable to third persons, but is rather for the cost of maintaining John at home. The jury by its verdict found that the Manleys had rendered past services and were entitled to $12,000 for services rendered before the commencement of this action. It further found that $30 per day shall be paid for room and board, including the services of the Manleys, for the period since John began, shortly before the commencement of this action, to live full time at home.[18]

Either the Manleys or DAIIE are entitled to a redetermination from time to time of the amounts properly allowable for nurse's aides or for room and board, including the services of the Manleys. If DAIIE contends that John has sufficiently recovered so that nurse's aides are not required or that

---

[18] The Court of Appeals said that a no-fault insurer is required to pay a family member a reasonable amount for nursing services rendered at home. *Manley,* n 3 *supra,* p 453. In so holding, the Court followed this Court's decision in *Kushay v Sexton Dairy Co,* 394 Mich 69, 74; 228 NW2d 205 (1975), construing the workers' compensation act.

In *Kushay,* this Court said "[o]rdinary household tasks are not within the statutory intendment." In *Kushay,* the injured worker, in contrast with John Manley, had some mobility—he could move around in a wheelchair or with the aid of two canes—and had full cognitive ability. The evidence in *Kushay* did not establish that the injured person would require institutionalization if not cared for by a family member at home.

a fewer number of hours of such assistance is required or that the cost set forth in the bills rendered is unreasonable, it may apply to the circuit court for a further determination of the necessity and reasonableness of the charges. However, absent some evidence that there has been a substantial change in the facts and circumstances, the trial court would be acting within its discretion in refusing to set the matter down for a further evidentiary hearing.

Until there is a determination by the Court of Appeals in another case or by this Court of the question whether the cost of providing food, shelter, utilities, clothing, and other maintenance at home is an "allowable expense" where the injured person, if not at home, could properly be placed in an institution because he cannot care for himself, or there is some other substantial change in the facts and circumstances, the jury's verdict establishing the need and the reasonable cost of providing room and board precludes relitigation of the factual or legal issues disputed and decided in this lawsuit, except, again, that insofar as nurse's aides are concerned DAIIE is not obliged to pay any amount except upon submission of evidence that services were actually rendered and of the actual cost expended.

In sum, the question tried in the circuit court was whether the Manleys should receive $78 or $48 to $50 per day, or some lesser amount for "room and board," and whether DAIIE should additionally pay $8 per hour for sixteen hours of nurse's aide care. DAIIE did not challenge in the trial court, or indeed in the Court of Appeals, the inclusion within "room and board" of the cost of providing food, shelter, utilities, clothing, or other maintenance at home except on the basis, which we agree with the Court of Appeals should be

rejected, that the Manleys' legal obligation to support John relieved DAIIE of obligation imposed by § 3107 of the no-fault act. The issues litigated and decided in this lawsuit may not be relitigated absent a change in law, including a rule of law hereafter announced by the Court of Appeals or this Court,[19] or a substantial change in the facts or circumstances.

IV

We agree, for the reasons set forth in the opinion of the trial court granting the Manleys' motion for entry of judgment on the special verdict and for the taxation of attorney fees, costs, and interest, that the trial court properly decided that DAIIE unreasonably refused to pay for nurse's aides at the Manleys' home, and that $15,000 plus costs was properly awarded to the Manleys' attorneys for representing them in establishing DAIIE's obligation to pay.[20]

Although DAIIE paid for nurse's aides pursuant to the mandatory preliminary injunction,[21] the underlying factual dispute was whether the Manleys or DAIIE was ultimately responsible for such costs. Had the jury verdict gone against the Manleys on this issue, they might have been obliged to reimburse DAIIE for the amounts paid for nurse's aides pursuant to the mandatory preliminary injunction.

---

[19] Cf. *Comm'r of Internal Revenue v Sunnen,* 333 US 591, 600; 68 S Ct 715; 92 L Ed 898 (1948).

[20] MCL 500.3148; MSA 24.13148. See *Wood v DAIIE,* 413 Mich 573, 586-589; 321 NW2d 653 (1982).

[21] The Court of Appeals said that attorney fees could not be awarded for establishing that nurse's aides were an allowable expense because DAIIE "paid those expenses promptly pursuant to the preliminary injunction." *Manley,* n 3 *supra,* p 462.

V

The cause is remanded to the trial court for reinstatement of the judgment entered by the trial court, subject to the modification by the Court of Appeals respecting penalty interest,[22] and for an accounting between the Manleys and DAIIE concerning the amounts owing after taking into consideration the amounts that have been paid pursuant to the mandatory injunctions entered by the trial court.

W<small>ILLIAMS</small>, C.J., and B<small>RICKLEY</small>, C<small>AVANAGH</small>, and R<small>ILEY</small>, JJ., concurred with L<small>EVIN</small>, J.

B<small>OYLE</small>, J. (*concurring in part, dissenting in part*). I concur with Justice L<small>EVIN</small>'s determination that the Court of Appeals correctly affirmed the trial court's directed verdict for DAIIE on the Manleys' claim for mental anguish. However, I write separately to explain my disagreement with the trial court's order awarding a set amount for future nursing care and room and board, the award for past nursing care and room and board without proof and a jury verdict of expenses incurred, and the award of attorney fees.

The Court of Appeals opinion provides a concise review of the facts of this case:

> John Manley, son of Kenneth A. Manley and Betty D. Manley, suffered a severe head injury when he was struck by an automobile on May 10, 1974. Defendant Detroit Automobile Inter-Insurance Exchange was the Manleys' no-fault automobile insurance carrier at the time of the accident. In this action, plaintiffs sought to recover damages and past expenses from defendant and to obtain a declaratory judgment as to the benefits due from

---

[22] See n 4.

defendant in the future. After a jury trial, defendant was found liable for $19,087.26 for modifications to the Manleys' home and for $12,000 for past services performed by Kenneth and Betty Manley. Defendant was further ordered to pay the Manleys $30 per day for room and board and $128 per day for care by nurse's aides as long as John Manley is cared for at his parents' home or until further order of the court. For slightly more than a year prior to trial, defendant was required by a preliminary injunction to pay plaintiffs $78 per day for room and board and $128 per day for care by nurse's aides. Defendant was allowed a credit for the amount paid under the preliminary injunction in excess of the rates later found by the jury. Defendant appeals by right, while plaintiffs cross-appeal. [*Manley v DAIIE*, 127 Mich App 444, 448-449; 339 NW2d 205 (1983).]

I

FUTURE "ALLOWABLE EXPENSES"

On May 17, 1982, the trial court entered a declaratory judgment on a special verdict. At trial, the jury found, on December 17, 1981, that the Manleys had incurred allowable expenses under MCL 500.3107(a); MSA 24.13107(a); that room and board, nurse's aides, home modifications, and services performed by the Manleys were reasonably necessary for John Manley's care, recovery, or rehabilitation; and that the reasonable charge for the various items were as follows: room and board, $30 per day, nursing care, $128 per day, home modifications, $19,087.26, services by the Manleys, $12,000.[1] There was no jury verdict concerning the

---

[1] The questions put to the jury and the jury's answers to the questions follow:

QUESTION 1: Did the Plaintiffs incur any allowable expenses as the result of this accident, which are defined as reasonable

actual expenses incurred by the Manleys in the past, nor was there a jury verdict concerning the Manleys' future expenses. However, the trial court entered the following:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiffs have judgment on said verdict and that the Defendant is liable to pay the sum of Thirty ($30.00) Dollars per day for Room and Board and One Hundred and Twenty Eight ($128.00) Dollars per day for a Sitter or Nurse's Aide for as long as John Manley is cared for at the home of his parents, Kenneth A. Manley and Betty D. Manley, or until further order of this Court.

The Court of Appeals found that requiring the DAIIE to pay for unincurred future expenses was erroneous because "the no-fault statute only requires insurers to pay for allowable expenses actually incurred . . . ." *Manley v DAIIE, supra,* p 451. I agree.

Personal injury protection (PIP) benefits include payment for "allowable expenses." MCL

---

charges for reasonably necessary products, services and accommodations for John Manley's care, recovery or rehabilitation?
Yes.

QUESTION 2: If your answer to Question 1 is "yes," please specify which of the following products, services and accommodations are reasonably necessary for John Manley's care, recovery or rehabilitation.

| | |
|---|---|
| a. Room and Board | Yes |
| b. Sitter or Nurse's Aide | Yes |
| c. Home modifications | Yes |
| d. Services performed by Mr. and Mrs. Manley | Yes |

QUESTION 3: For each "yes" to Question 2, please specify the reasonable charge for that particular product, service or accommodation.

| | |
|---|---|
| a. Room and Board (per day) | $      30.00 |
| b. Sitter or Nurse's Aide (per day) | $    128.00 |
| c. Home Modifications | $19,087.26 |
| d. Services performed by Mr. and Mrs. Manley | $12,000.00 |

500.3107(a); MSA 24.13107(a) defines "allowable
expenses" as follows: "[a]ll reasonable charges *in-
curred* for reasonably necessary products, services
and accommodations for an injured person's care,
recovery or rehabilitation." (Emphasis added.)
MCL 500.3110(4); MSA 24.13110(4) provides that
PIP benefits "accrue not when the injury occurs but
as the allowable expense . . . *is incurred.*" (Em-
phasis added.) Finally, MCL 500.3142(1), (2); MSA
24.13142(1), (2) provides:

> (1) Personal protection insurance benefits are
> payable as loss accrues.
> (2) Personal protection insurance benefits are
> overdue if not paid within 30 days after an insurer
> receives reasonable proof of the fact and of the
> amount of loss sustained.

The Michigan no-fault act requires that an ex-
pense under § 3107 be incurred before it is an
"allowable expense." There is no insurer liability
to pay under § 3142(1) until loss accrues, and loss
accrues under § 3110(4) as the expense is incurred,
not at the time of the injury.

The commentary to the Uniform Motor Vehicle
Accident Reparations Act (UMVARA), § 23 is perti-
nent since the language in §§ 3110(4) and 3142(1)
is substantially similar[2] to the language in UM-
VARA, § 23. The UMVARA commissioner's comment
to § 23 provides:

> This Section describes what is intended to be
> customary practice—paying basic reparation bene-
> fits monthly as loss accrues—contrasted to the
> customary practice of paying tort claims in lump

---

[2] One difference in language is that the first sentence in UMVARA,
§ 23(a) states that "benefits are payable *monthly* as loss accrues"
(emphasis added), while MCL 500.3142(1); MSA 24.13142(1) merely
states that PIP benefits "are payable as loss accrues."

sum settlements or judgments .... While this
Section ... provides that loss occurs only as loss
or expense is incurred, in limited circumstances
judgments may be entered covering future benefits
(Section 27[a]).

Section 27 of the UMVARA, entitled "Judgments
for Future Benefits," provides specifically that no
judgment for future allowable expenses can be
entered. The commentary[3] refers to the commen-
tary for § 26, which states:

   Settlements for future loss representing medical
   and other allowable expenses are not permitted.
   Given the provisions of this Act mandating the
   full payment of medical expense, without temporal
   or dollar limits, such a settlement might prejudice
   the claimant's ability to obtain future medical
   treatment or rehabilitation services if his injury
   should require more ambitious treatment than had
   been supposed at the time of settlement .... [14
   ULA 100-101].

Although unaccrued future medical expenses can-
not be awarded, § 27(a) specifically describes the
sort of declaratory relief which is proper:

   In an action for reparation benefits or to enforce
   rights under this Act, however, the court may
   enter a judgment declaring that the reparation
   obligor is liable for the reasonable cost of appropri-
   ate medical treatment or procedures, with refer-
   ence to a specified condition, to be performed in

---

[3] The comment to § 27 provides:

   This Section deals with the criteria under which a judgment
   may be entered for loss which will accrue after the date of the
   award. *A specific provision prohibits money judgments for
   future medical expense and other items of allowable expense,
   parallel to the similar provision in the Section dealing with
   settlements* (Section 26). [Emphasis added. 14 ULA 103.]

the future if it is ascertainable or foreseeable that
treatment will be required as a result of the injury
for which the claim is made.

The policy behind the UMVARA, § 27 bar against
judgments for future medical and other allowable
expenses is that the act "mandat[es] the full pay-
ment of medical expense, without temporal or
dollar limits" and the only sure way to enforce
this goal is to have the insurer pay all actual
allowable expenses as they are incurred.

While the Michigan no-fault act has no sections
comparable to UMVARA, § 27, I believe the provi-
sions concerning when loss accrues and when ex-
penses are payable by the insurer indicate a simi-
lar legislative intent that unincurred expenses not
be subject to a judgment such as that ordered by
the trial court in this case.[4] Under Michigan's no-
fault statute, the jury had no authority to find
that $30 per day would be the proper payment for
room and board in the future or that $128 per day
would be the proper future expense for nursing

_____

[4] I agree that a declaratory judgment using language such as that
found in UMVARA, § 27(a) would, in the proper circumstances, be
appropriate. Declaratory judgments are appropriate for declaring the
rights and other legal relations of interested parties. See MCR 2.605.
As the Court of Appeals observed in this case:

   In *Shavers v Attorney General*, 402 Mich 554, 588-589; 267
   NW2d 72 (1978), the Court explained that declaratory judg-
   ments exist to provide broad, flexible remedies for plaintiffs
   who seek guides for future conduct in order to preserve their
   legal rights. The Court further explained that in an action for a
   declaratory judgment the trial court is not precluded from
   reaching issues before actual injuries or losses have occurred.
   An action for a declaratory judgment is therefore an appropri-
   ate mechanism for determining whether an expense will be
   "allowable" under the standard stated in MCL 500.3107(a);
   MSA 24.13107(a), before the expense is actually incurred. Plain-
   tiffs may use an action for a declaratory judgment to avoid the
   risk of incurring expenses for which the insurer will not
   reimburse them. [*Manley v DAIIE, supra*, pp 450-451.]

care. John Manley's actual future expenses could be far more than this, and our no-fault system is not intended to be limited in this fashion. To the extent the trial court ordered the payment of $30 per day for future room and board and $128 per day for future nursing care, the order should be set aside and the Court of Appeals decision on this issue should be affirmed.

## II

### PAST "ALLOWABLE EXPENSES"

*A. Room and Board*

At trial, the jury found that $30 per day was a reasonable charge by the Manleys for providing room and board to their son John.[5] As with nursing care, the jury was not asked, and did not find, the expense actually incurred by the Manleys for room and board.[6] I agree with the Court of Appeals to the extent that it remanded the case for a determination of actual expenses incurred for room and board. However, I cannot agree with the Court of Appeals broad determination that "[p]roducts, services, or accommodations which are as necessary for an uninjured person as for an in-

[5] See n 1.

[6] We note that SJI2d 67.01, Form of Verdict: No-Fault First-Party Benefits Action, questions the jury regarding whether an allowable expense was incurred and, if so, what the amount of the expense was:

> QUESTION No. 3: Did the plaintiff incur "allowable expenses" as a result of this accident, which are defined as reasonable charges for reasonably necessary products, services and accommodations for the plaintiff's care, recovery and rehabilitation?
> Answer: ____ (yes or no)
> QUESTION No. 4: If your answer to Question No. 3 is "yes," what is the amount of the allowable expenses incurred by plaintiff?
> Answer: $____.__

jured person are not 'allowable expenses,'" *Manley v DAIIE, supra,* p 454, for purposes of MCL 500.3107(a); MSA 24.13107(a).

While DAIIE did not specifically raise the question, what expenses are properly included in room and board in a home-care situation such as the one in this case, I do not believe that this issue was waived. DAIIE sought throughout the trial both to require proof of actual expenses incurred and to obtain a jury verdict of expenses incurred. Neither the jury nor the trial court could consider the propriety of various items of expense when no proof of them was allowed. While generally this Court will not decide an issue that was not raised at trial, we will decide unraised issues where "necessary to a proper determination of a case." *Prudential Ins Co of America v Cusick,* 369 Mich 269, 290; 120 NW2d 1 (1963); see also *Felcoskie v Lakey Foundry Corp,* 382 Mich 438, 442; 170 NW2d 129 (1969). In this case, the Court of Appeals, sua sponte, raised the issue of the proper components of room and board, the parties and various amici curiae have extensively briefed the issue, and the issue will arise upon remand. Therefore, it is proper for this Court to review the Court of Appeals determination.

The "test" adopted by the Court of Appeals— that any expense equally necessary to an uninjured person is not an "allowable expense"—is unwieldy and unworkable. The cost of institutional care for John Manley included, for example, food, an item as necessary to uninjured persons as to John. I find no principled basis for deciding that food provided to John at home is not as much an "allowable expense" as the food provided in a licensed medical care facility. Cf. *Paul v Ohio Casualty Ins Co,* 196 NJ Super 286; 482 A2d 199 (1984) (similar therapy would be required if claim-

ant were hospitalized). Where a person who normally would require institutional treatment is cared for at home in a quasi-institutional setting made possible by the love and dedication of the injured victim's family, the test for "allowable expenses" should not differ from that set out in MCL 500.3107(a); MSA 24.13107(a):

Personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation.

The statute requires that three factors be met before an item is an "allowable expense": 1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred. These are the standard requirements for recovery of such expenses under all no-fault plans, 12A Couch, Insurance (2d ed), § 45.674, and they are the proper requirements for application in this case. The focus should be on the product, service, or accommodation provided, not upon the provider's status as a relative. An item that would be provided in an institutional setting is not barred from being an "allowable expense" merely because it is provided at home instead.

As the Court of Appeals noted, "comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed by Mr. and Mrs. Manley . . . ." *Manley, supra,* p 455. Since no comprehensive proof was presented at trial concerning the various items of expense incurred by the Manleys under the rubric of "room and

board," this Court is not in a position to state whether specific items are, or are not, an "allowable expense" in this case. This is a proper inquiry for the factfinder on remand.

## B. Nursing Care

The jury found that sitter or nurse's aide services were reasonably necessary for John Manley's care, and that a reasonable charge for the service was $128 per day.[7] There was no jury verdict concerning the actual past expenses incurred by the Manleys for unskilled nursing care provided by themselves or by outside personnel. The trial court determined DAIIE's liability for past nursing care by applying the daily rate of $158, found by the jury to be a reasonable charge for nursing care ($128 per day) *and* room and board ($30 per day), against the total monies paid by DAIIE under the December 1, 1980, preliminary injunction.[8]

A remand to determine past expenses incurred for nurse's aides or sitters is necessary for reasons

---

[7] See n 1.

[8] The May 17, 1982, order granting termination of the preliminary injunction provided in pertinent part:

> It is further ordered, adjudged and decreed that the Judgment in this cause shall grant Defendant a credit amounting to the difference between what was actually paid pursuant to the terms of the Preliminary Injunction and the One Hundred Fifty Eight ($158.00) Dollars per day awarded by the jury, plus interest at 12% per annum.

Similarly, the declaratory judgment provided:

> It is further ordered, adjudged and decreed that the said payments shall be made to Kenneth A. Manley and Betty D. Manley or to their order subject to a credit in favor of Defendant amounting to the difference between what was actually paid pursuant to the terms of the Preliminary Injunction and the One Hundred and Fifty Eight ($158.00) Dollar amount awarded by the jury, plus interest at the rate of twelve (12%) percent per annum.

similar to those requiring a remand to determine actual expenses incurred for room and board. MCL 500.3107(a); MSA 24.13107(a) requires that expenses be incurred before they qualify as an allowable expense for which an insurer is liable.

### III

#### AWARD OF ATTORNEY FEES

I would affirm the Court of Appeals decision that no award of attorney fees is proper in this case. MCL 500.3148(1); MSA 24.13148(1) describes when a claimant's attorney fees must be paid by a no-fault insurer:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

The Court of Appeals decision aptly explains the attorney fee issue and the proper treatment of that issue in this case:

> Here, the trial court determined that defendant had unreasonably refused to pay plaintiffs' claim for care by nurse's aides and awarded plaintiffs an attorney fee for that portion of their claim. Defendant argues that the trial court erred by awarding any attorney fee, while plaintiffs argue that the trial court should have awarded them an attorney fee covering their entire case.
> The statute conditions an award of attorney fees on a finding that the insurer unreasonably refused to pay or unreasonably delayed in making payment. We therefore conclude that plaintiffs are not

entitled to an award of attorney fees for that portion of their claim which involved future expenses because the insurer's obligation to pay those expenses would not arise until the expenses were incurred. The evidence introduced at the trial showed that plaintiffs made no claim for home modification expenses or the value of their services before commencing this action; the trial court therefore did not err in holding that defendant had not unreasonably refused to pay or unreasonably delayed in making payment for those expenses. The only remaining elements of plaintiffs' recovery are the expenses for room and board and for care by nurse's aides between the time of the preliminary injunction and the time of trial. Those expenses could not support an award of attorney fees because defendant paid those expenses promptly pursuant to the preliminary injunction. We therefore conclude that plaintiffs were not entitled to an attorney fee under MCL 500.3148(1); MSA 24.13148(1). [*Manley, supra,* p 462.]

The judgment of the Court of Appeals should be affirmed on this issue.

## IV

### CONCLUSION

For the reasons articulated above, I would affirm the Court of Appeals remand of this case for a determination of past expenses incurred for nurse's aides and room and board. I would also affirm the Court of Appeals determination that the defendant was improperly ordered to pay unincurred future expenses. The Court of Appeals "test" limiting "allowable expenses" for quasi-institutional home care to those expenses not as necessary to uninjured as to injured persons should be explicitly disavowed. Finally, I would find that an award of attorney fees is improper in this case.

ARCHER, J., took no part in the decision of this case.