**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 14, 2005**

PHYLLIS L. GRIFFITH, Legal Guardian
for DOUGLAS W. GRIFFITH, a Legally
Incapacitated Adult,

    Plaintiff-Appellee,

v                                No. 122286

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.

_____

**BEFORE THE ENTIRE BENCH**

**CORRIGAN, J.**

In this case, we consider whether the no-fault act, MCL 500.3101 *et seq.*, requires defendant, a no-fault insurer, to reimburse plaintiff for her incapacitated husband's food expenses. Because the food in this case is neither "for accidental bodily injury" under MCL 500.3105(1) nor "for an injured person's care, recovery, or rehabilitation" under MCL 500.3107(1)(a), we hold that the expenses for it may not be recovered under those provisions

of the no-fault act.  We thus reverse the judgment of the Court of Appeals.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

On April 28, 1994, plaintiff's sixty-three-year-old husband, Douglas Griffith,[1] suffered a severe brain injury as a result of a motor vehicle accident.  He received treatment at in-patient facilities and hospitals until August 1995, at which time he was transferred to a residence where he received twenty-four-hour nursing and attendant care.  On August 6, 1997, Griffith returned home with plaintiff.  He remains confined to a wheelchair and continues to require assistance with basic daily tasks such as eating and bathing.

After the accident, defendant provided coverage as Griffith's no-fault insurer.  Until the time that Griffith returned home, the expenses that defendant covered included food expenses.  After Griffith returned home, defendant denied plaintiff's claim for Griffith's food expenses, and plaintiff sued to recoup those expenses.[2]  The trial court ruled that Griffith's food costs are an "allowable expense"

---

[1]  This opinion references Douglas Griffith as "Griffith" and Phyllis Griffith as "plaintiff."

[2] Plaintiff's complaint included claims for items other than Griffith's food, but those claims are not at issue in this appeal.

2

under MCL 500.3107(1)(a) of the no-fault act and ordered defendant to pay a per diem food charge.

The Court of Appeals affirmed.[3] The Court relied on *Reed v Citizens Ins Co of America*, 198 Mich App 443; 499 NW2d 22 (1993), which held that a person receiving at-home care is entitled to room and board costs under MCL 500.3107(1)(a) to the same extent that such costs would constitute an allowable expense if the injured person received the same care in an institutional setting. Thus, the panel concluded that, under *Reed*, Griffith's food costs are an "allowable expense" under MCL 500.3107(1)(a).

Defendant filed an application for leave to appeal to this Court, which this Court denied.[4] Thereafter, this Court granted defendant's motion for reconsideration and granted leave to appeal.[5]

## II. STANDARD OF REVIEW

This case requires us to determine whether an injured person's food costs constitute an "allowable expense" under MCL 500.3107(1)(a). Issues of statutory interpretation are

---

[3] Unpublished opinion per curiam of the Court of Appeals, issued August 16, 2002 (Docket No. 232517).

[4] 468 Mich 946 (2003).

[5] 469 Mich 1020 (2004).

questions of law that this Court reviews de novo. *Jenkins v Patel*, 471 Mich 158, 162; 684 NW2d 346 (2004).

### III. PRINCIPLES OF STATUTORY INTERPRETATION

When interpreting a statute, we must ascertain the legislative intent that may reasonably be inferred from the statutory language itself. *Sotelo v Grant Twp*, 470 Mich 95, 100; 680 NW2d 381 (2004). When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Because the role of the judiciary is to interpret rather than write the law, courts lack authority to venture beyond a statute's unambiguous text. *Id*. Further, we accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

### IV. ANALYSIS

#### A. Statutory Language and Legal Background

MCL 500.3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits *for accidental bodily injury* arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [Emphasis added.]

4

According to the plain language of MCL 500.3105(1), a no-fault insurer is only required to pay benefits "for accidental bodily injury" arising out of an automobile accident. The no-fault act *further* restricts a no-fault insurer's liability by defining the limited types of benefits that are payable "for accidental bodily injury . . . ." MCL 500.3107(1)(a), the statutory provision at the center of this case, states:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations *for an injured person's care, recovery, or rehabilitation.* [Emphasis added.]

Thus, in addition to the requirement under MCL 500.3105(1) that benefits be "for accidental bodily injury," MCL 500.3107(1)(a) circumscribes benefits to those expenses consisting only of items or services that are reasonably necessary "for an injured person's care, recovery, or rehabilitation."

Both this Court and the Court of Appeals have interpreted and applied the above statutes in cases involving claims for food or "room and board" expenses. In *Manley v Detroit Automobile Inter-Ins Exchange,* 127 Mich App 444, 448; 339 NW2d 205 (1983), rev'd 425 Mich 140 (1986), the plaintiffs' minor son suffered severe head

5

trauma in an automobile accident. He resided with the plaintiffs and received care from nurse's aides. *Id.* at 449. The plaintiffs sued the defendant no-fault carrier, seeking, among other things, reimbursement for his room and board costs. *Id.* at 448-449. The defendant insurance carrier argued that because the plaintiffs already had a legal duty to care for their child, room and board costs were not compensable. *Id.* at 451. The Court of Appeals rejected this argument, largely on the basis of a worker's compensation case that distinguished between "ordinary household tasks" such as cleaning and washing clothes and nonordinary tasks such as "'[s]erving meals in bed and bathing, dressing, and escorting a disabled person . . . .'" *Id.* at 452, quoting *Kushay v Sexton Dairy Co,* 394 Mich 69; 228 NW2d 205 (1975).

The panel concluded that the distinction between ordinary and nonordinary tasks could be reconciled with the language of MCL 500.3107(a), which then provided that "products, services, and accommodations not reasonably necessary for the injured person's care, recovery, or rehabilitation are not 'allowable expenses.'" 127 Mich App at 453. The Court reasoned:

> The necessity for the performance of ordinary household tasks has nothing to do with the injured person's care, recovery, or rehabilitation; such tasks must be performed whether or not anyone is injured.

6

> This reasoning supports a generalization concerning the circumstances in which a product, service, or accommodation can fall within the definition of "allowable expense." *Products, services, or accommodations which are as necessary for an uninjured person as for an injured person are not "allowable expenses."* [*Id.* at 453-454 (emphasis added).]

The panel then opined that food "is as necessary for an uninjured person as for an injured person" and thus would not ordinarily constitute an "allowable expense" under MCL 500.3107 for an injured person cared for at home. 127 Mich App at 454.

When *Manley* was appealed to this Court, we effectively vacated the Court of Appeals room and board analysis. *Manley v Detroit Automobile Inter-Ins Exchange,* 425 Mich 140; 388 NW2d 216 (1986). We stated that the "question whether food, shelter, utilities, clothing, and other such maintenance expenses are an allowable expense when the injured person is cared for at home" had neither been raised before the trial court nor argued in the Court of Appeals. *Id.* at 152. Accordingly, this Court declined to address the issue and stated that the Court of Appeals analysis of the issue "shall not be regarded as of precedential force or effect." *Id.* at 153.

Justice Boyle issued a concurring and dissenting opinion, asserting that the room and board issue was properly before this Court because the Court of Appeals had

7

raised it sua sponte and discussed the issue in its opinion. *Id.* at 168 (Boyle, J., concurring in part and dissenting in part). She could find "no principled basis" for distinguishing between food provided in an institutional setting and food provided at home, and concluded that the Court of Appeals "injured person vs. uninjured person" test was not only "unwieldy and unworkable" but that it effectively punished those who choose to care for injured family members at home. *Id*. at 168-169. Justice Boyle opined that MCL 500.3107 imposes three requirements for "allowable expenses": "1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred." 425 Mich at 169.

Thereafter, in *Reed*, the Court of Appeals adopted Justice Boyle's *Manley* analysis. The insured in *Reed* had been severely injured in an auto accident. *Reed*, *supra* at 445. The plaintiff, the insured's mother, filed various claims against the defendant insurer and moved to amend her complaint to include a claim for room and board expenses. *Id*. at 445-446. The trial court denied the motion on the basis that such expenses were not recoverable under the no-fault act. *Id*. at 446.

The Court of Appeals reversed, reasoning as follows:

8

We see no compelling reason not to afford the same compensation under the act to family members who provide room and board. Subsection 1(a) does not distinguish between accommodations provided by family members and accommodations provided by institutions, and we decline to read such a distinction into the act. Moreover, holding that accommodations provided by family members is [sic] an "allowable expense" is in accord with the policy of this state. Denying compensation for family-provided accommodations while allowing compensation in an institutional setting would discourage home care that is generally, we believe, less costly than institutional care. Irrespective of cost considerations, it can be stated without hesitation that home care is more personal than that given in a clinical setting. . . .

*We hold that, where an injured person is unable to care for himself and would be institutionalized were a family member not willing to provide home care, a no-fault insurer is liable to pay the cost of maintenance in the home.* [*Id.* at 452-453 (citations omitted; emphasis added).]

In addition to the above reasoning, the Court of Appeals relied on the notion that because the no-fault act is remedial in nature, it "must be liberally construed in favor of persons intended to benefit thereby." *Id*. at 451.

## B. Interpretation of Statutory Language and Application

As previously stated, MCL 500.3105(1) and MCL 500.3107(1)(a) impose two separate and distinct requirements for "care, recovery, or rehabilitation" expenses to be compensable under the no-fault act. First, such expenses must be "*for accidental bodily injury* arising out of the ownership, operation, maintenance or use of a

9

motor vehicle . . . ."  MCL 500.3105(1) (emphasis added). Second, these expenses must be "reasonably necessary . . . for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

Defendant contends that MCL 500.3105(1) requires that allowable expenses be causally connected to a person's injury.  We agree.  In fact, MCL 500.3105(1) imposes two causation requirements for no-fault benefits.

First, an insurer is liable only if benefits are "*for* accidental bodily injury . . . ."  "[F]or" implies a causal connection.[6]  "[A]ccidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability.  Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.

Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation,

_____

[6] *Random House Webster's College Dictionary* (1997) defines "for," when used as a preposition, as "with the object or purpose of," "intended to belong to or be used in connection with," or "suiting the purposes or needs of." The definition offered by Justice Kelly—"'by reason of'"— also implies a causal connection.  See *post* at 5. (Citation omitted.)

10

maintenance or use of a motor vehicle . . . ."  It is not *any* bodily injury that triggers an insurer's liability under the no-fault act.  Rather, it is only those injuries that are caused by the insured's use of a motor vehicle.

In this case, it is uncontested that the insured's injuries arose out of his use of an automobile.  Therefore, to the extent that the insured's injuries stem from an automobile accident, application of the second causal element noted above does not bar plaintiff's claim.

The first causal element, however, poses a problem for plaintiff.  Plaintiff does not claim that her husband's diet is different from that of an uninjured person, that his food expenses are part of his treatment plan, or that these costs are related in any way to his injuries.  She claims instead that Griffith's insurer is liable for ordinary, everyday food expenses.  As such, plaintiff has not established that these expenses are "for accidental bodily injury . . . ."[7]

_____

[7] Our dissenting colleagues fail to explain how they avoid the causation requirement in MCL 500.3105(1).  As we will explain, because plaintiff is not on a special diet, his food expenses are not "*for* accidental bodily injury," and those expenses therefore are not recoverable in this case.  It is therefore not surprising that our dissenting colleagues avoid developing their analysis of MCL 500.3105(1), because their position is plainly inconsistent with the unambiguous language of that provision.

11

Even if ordinary food expenses were compensable under § 3105, an insurer would be liable for those expenses only if they were also "allowable expenses" under MCL 500.3107(1)(a). This section provides that benefits are payable for "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." In other words, an insurer is liable only for the cost of "products, services and accommodations" "reasonably necessary" "for an injured person's care, recovery, or rehabilitation."[8]

There is no dispute that Griffith is an "injured person." Thus, the question is whether food is reasonably necessary for his "care, recovery, or rehabilitation" as an injured person. It is not contended here that the food expenses at issue are a part of the insured's "recovery" or "rehabilitation." Indeed, plaintiff does not allege that the food has special curative properties that might advance Griffith's recovery or rehabilitation. The key issue,

---

[8] In her concurring and dissenting opinion in *Manley*, Justice Boyle read MCL 500.3107(1)(a) as imposing only three requirements: "1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred." 425 Mich at 169 (Boyle, J., concurring in part and dissenting in part). In addition to these requirements, however, the statute states that an "allowable expense" must be "for" one of the following: (1) an injured person's care, (2) his recovery, or (3) his rehabilitation.

therefore, is whether the food expenses are necessary for Griffith's "care."

Because "care" can have several meanings depending on the context in which it is used, the doctrine of *noscitur a sociis* is helpful in discerning the meaning of that term in this statute. This doctrine is premised on the notion that "the meaning of statutory language, plain or not, depends on context." *King v St Vincent's Hosp*, 502 US 215, 221; 112 S Ct 570; 116 L Ed 2d 578 (1991).[9] Thus, under the doctrine of *noscitur a sociis*, "'"a word or phrase is given meaning by its context or setting."'" *Koontz, supra* at 318 (citations omitted). As a general matter, "words and clauses will not be divorced from those which precede and those which follow." *Sanchick v State Bd of Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955). When construing a series of terms such as "care, recovery, or rehabilitation," we are guided by the principle "that words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v Impac Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

---

[9] See *Koontz, supra* at 318, quoting *Brown v Genesee Co Bd of Comm'rs (After Remand)*, 464 Mich 430, 437; 628 NW2d 471 (2001), quoting *Tyler v Livonia Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999) ("'Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: "[i]t is known from its associates," see Black's Law Dictionary (6th ed), p 1060.'").

Generally, "care" means "protection; charge," and "to make provision." *Random House Webster's College Dictionary* (2001). Thus, taken in isolation, the word "care" can be broadly construed to encompass *anything* that is reasonably necessary to the provision of a person's protection or charge. But we have consistently held that "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co,* 466 Mich 142, 146; 644 NW2d 715 (2002). Therefore, we must neither read "care" so broadly as to render nugatory "recovery and rehabilitation" nor construe "care" so narrowly that the term is mere surplusage.[10] "Care" must have a meaning that is related to, but distinct from, "recovery and rehabilitation."[11]

---

[10] Our dissenting colleagues make the former error, construing "care" so broadly that "recovery and rehabilitation" are mere surplusage. If "care" means, as Justice Kelly contends, "'the provision of what is necessary for the welfare and protection of someone,'" *post* at 8, then "recovery and rehabilitation"—both of which are certainly necessary for an injured person's welfare—are stripped of any meaning.

[11] See Sutherland Statutory Construction (6th ed, 2000 rev), § 47.16, pp 265-267 ("[W]hen two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word."

As an initial matter, it is important to note that the statute does not require compensation for any item that is reasonably necessary to a person's care in general. Instead, the statute specifically limits compensation to charges for products or services that are reasonably necessary "for an *injured person's* care, recovery, or rehabilitation." (Emphasis added.) This context suggests that "care" must be related to the insured's injuries.

This conclusion is supported by the fact that the statute lists "care" together with "recovery" and "rehabilitation." "Recovery" is defined as "restoration or return to any former and better condition, esp. to health from sickness, injury, addiction, etc." *Random House Webster's College Dictionary* (2001). "Rehabilitate" is defined as "to restore or bring to a condition of good health, ability to work, or productive activity." *Id*. Both terms refer to restoring an injured person to the condition he was in before sustaining his injuries. Consequently, expenses for "recovery" or "rehabilitation" are costs expended in order to bring an insured to a condition of health or ability sufficient to resume his preinjury life. Because "recovery" and "rehabilitation" are necessary only when an insured has been injured, both terms refer to products, services, and accommodations that

15

are necessary *because of* injuries sustained through the use of a motor vehicle.

"Care" must have a meaning that is broader than "recovery" and "rehabilitation" but is not so broad as to render those terms nugatory. As noted above, both "recovery" and "rehabilitation" refer to an underlying injury; likewise, the statute as a whole applies only to an "injured person." It follows that the Legislature intended to limit the scope of the term "care" to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident.[12] "Care" is broader than "recovery" and "rehabilitation" because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state.

---

[12] For instance, the cost associated with setting a broken leg would be compensable under the term "recovery" because it is necessary to return a person to his post-injury health, and the cost of learning to walk on a prosthetic leg would be recoverable under the term "rehabilitation" because it is necessary to bring the person back to a condition of productive activity. Similarly, the cost of such items as a prosthetic leg or special shoes would be recoverable under the term "care," even though the person will never recover or be rehabilitated from the injuries, because the cost associated with such products or accommodations stems from the injury.

Griffith's food costs here are not related to his "care, recovery, or rehabilitation." There has been no evidence introduced that he now requires different food than he did before sustaining his injuries as part of his treatment plan. While such expenses are no doubt necessary for his *survival*, they are not necessary for his recovery or rehabilitation from the injuries suffered in the accident, nor are they necessary for his care because of the injuries he sustained in the accident. Unlike prescription medications or nursing care, the food that Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his "care, recovery, or rehabilitation." In fact, if Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now. We conclude, therefore, that his food costs are completely unrelated to his "care, recovery, or rehabilitation" and are not "allowable expenses" under MCL 500.3107(1)(a).[13]

---

[13] Our dissenting colleagues do not pay sufficient regard to the context in which the word "care" is used in MCL 500.3107(1)(a). They do not give effect to the Legislature's choice to use the term "care" in conjunction with the terms "recovery" and "rehabilitation." They also fail to give effect to the statute's specific reference to "*an injured person's* care, recovery, or rehabilitation." As we have explained, this contextual background aids our effort to discern the meaning of the term "care" as used in the statute.

Footnotes continued on following page.

The parties focus on the distinction between food costs for hospital food and food costs for an insured

---

Our dissenting colleagues would instead read the word "care" in a vacuum, thereby allowing them to impose their preferred meaning without attempting to discern the context in which the Legislature used the term. Our dissenting colleagues' failure to read the word "care" in context renders the word devoid of any definitional limit. Let there be no mistake—the implication of their interpretation is that *any expense* that is necessary for a person's general "care" is recoverable, *regardless of whether that expense bears any causal relationship* to an "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). Because they would allow a plaintiff to recover expenses for normal, everyday food consumed at home that does not differ from what an uninjured person would eat, would they also allow recovery of housing costs and expenses for clothing and toiletries, where those expenses do not bear any causal relationship to an accidental bodily injury? Justice Kelly seems to concede that she would require no-fault insurers to pay for an injured person's "shelter" where that expense bears no causal relation to the injuries. *Post* at 15.

It thus appears that Justice Kelly would essentially invent a new entitlement system by converting our no-fault law into a general welfare scheme. Her new scheme would pay all expenses of everyday life, such as mortgage payments and grocery bills, for anyone who has been injured in a motor vehicle accident, *even where those expenses do not arise from injuries sustained in the accident*. Justice Kelly does not explain how she would pay for her newly minted entitlement plan, but the effect of her position would be to force Michigan citizens to make these general welfare payments through increased mandatory insurance premiums. Perhaps Justice Kelly sincerely believes that our state's citizens should bear this new financial burden, but such a policy choice belongs to the legislative branch of our government. In deciding the case before us, we must honor the intent of the Legislature as reflected in the current language of the no-fault act by applying the causation requirement embodied in the provisions at issue.

18

receiving at-home care.  Plaintiff contends that there is no distinction between such costs.  We disagree.

Food costs in an institutional setting are "benefits for accidental bodily injury" and are "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  That is, it is "reasonably necessary" for an insured to consume hospital food during in-patient treatment given the limited dining options available.  Although an injured person would need to consume food regardless of his injuries, he would not need to eat *that particular food* or bear the cost associated with it.  Thus, hospital food is analogous to a type of special diet or select diet necessary for an injured person's recovery.  Because an insured in an institutional setting is required to eat "hospital food," such food costs are necessary for an insured's "care, recovery, or rehabilitation" while in such a setting.  Once an injured person leaves the institutional setting, however, he may resume eating a normal diet just as he would have had he not suffered any injury and is no longer required to bear the costs of hospital food, which are part of the unqualified unit cost of hospital treatment.[14]

_____

[14] Our dissenting colleagues opine that the language of the no-fault act does not distinguish between food expenses

Footnotes continued on following page.

19

This reasoning can be taken a step further when considering the costs of items such as an injured person's clothing, toiletries, and even housing costs. Under plaintiff's reasoning, because a hospital provided Griffith with clothing while he was institutionalized, defendant

incurred in a hospital and food expenses at home. As we have explained, however, we believe this distinction arises from the language in MCL 500.3105(1) and MCL 500.3107(1)(a). Food expenses in an institutional setting are "benefits for accidental bodily injury," and are "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," given the limited dining options available in hospitals. After all, an injured person is required to eat *hospital food* precisely because his injuries require treatment in a hospital. By contrast, a person who eats a normal diet at home does not incur food expenses that meet the requirements of MCL 500.3105(1) and MCL 500.3107(1)(a).

Justice Kelly also asks whether the majority is implying that hospital food expenses would be reimbursable under MCL 500.3107(1)(a), but not under MCL 500.3105(1). We have stated clearly, however, that food costs in an institutional setting are "benefits for accidental bodily injury" and are "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." See p 19 of this opinion. In other words, we have quoted the language from *both* statutory provisions in saying that such expenses are recoverable.

Finally, Justice Kelly expresses concerns about allowing recovery for food expenses in a hospital but not at home. It is the prerogative of the Legislature, however, to determine whether the no-fault act should be amended to allow recovery of food costs that are unrelated to an accidental bodily injury, taking into account policy concerns such as those expressed by Justice Kelly and competing considerations such as the increased costs of premiums for this mandatory form of insurance coverage. This Court lacks both the institutional capacity to weigh the competing policy considerations and the constitutional authority to amend the no-fault act.

20

should continue to pay for Griffith's clothing after he is released. The same can be said of Griffith's toiletry necessities and housing costs. While Griffith was institutionalized, defendant paid his housing costs. Should defendant therefore be obligated to pay Griffith's housing payment now that he has been released when Griffith's housing needs have not been affected by his injuries?

Under plaintiff's reasoning, nothing would prevent no-fault insurers from being obligated to pay for any expenses that an injured person would otherwise be provided in an institutional setting as long as they are remotely related to the person's general care. Plaintiff's interpretation of MCL 500.3107(1)(a) stretches the language of the act too far and, incidentally, would largely obliterate cost containment for this mandatory coverage. We have always been cognizant of this potential problem[15] when interpreting the no-fault act, and we are no less so today.

---

[15] See, e.g., *Shavers v Attorney General,* 402 Mich 554, 607-611; 267 NW2d 72 (1978) ("In choosing to make no-fault insurance compulsory for all motorists, the Legislature has made the registration and operation of a motor vehicle inexorably dependent on whether no-fault insurance is available at fair and equitable rates."); *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 597; 648 NW2d 591 (2002) (recognizing that, because no-fault coverage is mandatory, the Legislature has continually sought to make it more affordable); *Celina Mut Ins Co v Lake States Ins*

Footnotes continued on following page.

Moreover, in seeking reimbursement for food and other such quotidian expenses, plaintiff is essentially seeking a wage-loss benefit. Reimbursement for the value of lost wages, however, is specifically addressed elsewhere in the no-fault act. See MCL 500.3107(1)(b).[16] See also *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 463, 471; 521 NW2d 831 (1994). Plaintiff's construction of § 3107(1)(a) is strongly undermined by the Legislature's express provision for, and limitation on, wage-loss benefits in § 3107(1)(b).

Under MCL 500.3105 and MCL 500.3107(1)(a), defendant is not required to reimburse plaintiff for the food expenses at issue in this case. Such expenses are not necessary "for accidental bodily injury" under MCL 500.3105. In addition, they are not "allowable expenses"

---

*Co,* 452 Mich 84, 89; 549 NW2d 834 (1996) ("the no-fault insurance system . . . is designed to provide victims with assured, adequate, and prompt reparations *at the lowest cost to both the individuals and the no-fault system*" [emphasis added]); *O'Donnell v State Farm Mut Ins Co,* 404 Mich 524, 547; 273 NW2d 829 (1979) (recognizing that the Legislature had provided for setoffs in the no-fault act: "Because the first-party insurance proposed by the act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible. Otherwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance.").

[16] This section provides, in part:

Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured.

22

under MCL 500.3107(1)(a) because food is not necessary for Griffith's "care, recovery, or rehabilitation" under that subsection. Because the rule announced in *Reed*, *supra*, is contrary to the language of the above provisions, we overrule the Court of Appeals decision in *Reed*.

## V. CONCLUSION

We conclude that defendant is not required to reimburse plaintiff for Griffith's food costs under MCL 500.3105 and MCL 500.3107(1)(a) of the no-fault act. Accordingly, we reverse the judgment of the Court of Appeals.

> Maura D. Corrigan
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

STATE   OF   MICHIGAN

SUPREME COURT

PHYLLIS L. GRIFFITH, legal guardian
for DOUGLAS W. GRIFFITH, a legally
incapacitated adult,

    Plaintiff-Appellee,

v                                                                        No. 122286

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.

_____

WEAVER, J. *(dissenting).*

I dissent from the majority's holding that food expenses for plaintiff's incapacitated husband are not "allowable expenses" for which plaintiff should be paid under MCL 500.3107(1)(a). Rather, consistently with Justice Boyle's concurrence in *Manley v Detroit Automobile Inter-Ins Exch*,[1] and with the Court of Appeals opinion in *Reed v Citizens Ins Co of America*,[2] I would conclude that the reasonable charges incurred for plaintiff's husband's food while he is cared for at home are recoverable as

_____

[1] 425 Mich 140, 168-169; 388 NW2d 216 (1986)(Boyle, J., concurring in part and dissenting in part).

[2] 198 Mich App 443, 452-453; 499 NW2d 22 (1993).

"allowable expenses" under the statute. Therefore, I would affirm the Court of Appeals decision in this case.

Under the statute, "allowable expenses" consist of

all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. [MCL 500.3107(1)(a).]

With this language, the Legislature provided a fairly broad definition of "allowable expenses" to encompass all the things that might reasonably be needed for an injured person's care, recovery, or rehabilitation. As Justice Kelly notes in her dissent, "[i]t is difficult to deny that food is a product reasonably necessary for the care of an invalid, however narrowly 'care' is defined. Without nourishment, an injured person could not be restored to health and could not properly be cared for." *Post* at 9. And, as stated by Justice Boyle, there is

no principled basis for deciding that food provided to [the plaintiff's husband] at home is not as much an "allowable expense" as the food provided in a licensed medical care facility. Where a person who normally would require institutional treatment is cared for at home in a quasi-institutional setting made possible by the love and dedication of the injured victim's family, the test for "allowable expenses" should not differ from that set out in MCL 500.3107(a). [*Manley, supra* at 168-169 (citations omitted).]

Therefore, it is reasonable to conclude that the cost of plaintiff's husband's food is recoverable as "allowable

2

expenses" under the no-fault act, and I would affirm the Court of Appeals decision.

Elizabeth A. Weaver

3

# STATE OF MICHIGAN

## SUPREME COURT

PHYLLIS L. GRIFFITH, legal guardian
for DOUGLAS W. GRIFFITH, a legally
incapacitated adult,

    Plaintiff-Appellee,

v                                              No. 122286

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

Today the Court reaches the extraordinary conclusion that food is not always necessary for an injured person's care. The Court concludes that food is "completely unrelated to [an injured person's] 'care, recovery, or rehabilitation'" if provided in a home, although it is both necessary and reimbursable if provided in an institution. *Ante* at 8.

I disagree. The Court of Appeals decision that reached the opposite conclusion twelve years ago, *Reed v Citizens Ins Co of America,*[1] was correct and should not be

_____

[1] 198 Mich App 443; 499 NW2d 22 (1993).

overturned. It is obvious to me that food should continue to be an allowable expense under the no-fault act wherever provided as long as reasonably necessary to an injured person's care.

We review issues of statutory construction de novo. *Stewart v Michigan*, 471 Mich 692, 696; 692 NW2d 376 (2004). In construing statutes, our purpose is to determine and implement the intent of the Legislature. *Sanders v Delton Kellogg Schools*, 453 Mich 483, 487; 556 NW2d 467 (1996).

The act under review here was passed to provide benefits for victims of motor vehicle accidents without regard to who was at fault. Substituting for certain tort remedies that it abolished, the act created a comprehensive and expeditious benefit system through insurance. *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978). This Court has determined that the Legislature intended the no-fault act to be construed liberally in favor of the insured.[2] *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28; 528 NW2d 681 (1995).

---

[2] The majority's decision today, taking food as it were from the mouth of the injured insured convalescing at home, is anything but a liberal construction in his favor.

2

In this case, Mr. Griffith was injured in an automobile accident that rendered him unable to care for himself. He remains injured. Therefore, without contest, he satisfies the requirement of § 3105(1), and his insurer must pay him benefits. The issue here involves the meaning of "benefits."

Section 3105(1) requires:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

On its face, this section requires an insurer to pay benefits to its insured injured in a motor vehicle accident. The Legislature took pains to define at a different section of the statute what benefits must be paid. MCL 500.3107(1)(a).[3] As the majority observes, §

_____

[3] In pertinent part, MCL 500.3107 provides:

> [P]ersonal protection insurance benefits are payable for . . .

> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. . . .

> (b) Work loss . . . .

Footnotes continued on following page.

3107(1)(a) is "the statutory provision at the center of this case." *Ante* at 5. Because the Legislature defined "benefits" in § 3107(1)(a), it seems contradictory that it would have given "benefits" a different definition in § 3105(1).

Yet, the majority reads § 3105(1) to mean that the only benefits that a no-fault insurer is liable to pay are those "causally connected to the accidental bodily injury . . . ." *Ante* at 10. It is not Mr. Griffith's injury, it reasons, that occasioned his need for food. Hence the cost of his food is not a covered expense.

The majority finds that § 3105 limits the benefits made available in § 3107, despite the fact that the courts have never before found such a limitation. The majority defines "for" in the phrase "an insurer is liable to pay benefits *for* accidental bodily injury" as meaning "'with the object or purpose of,'" "'intended to belong to or be used in connection with,'" and "'suiting the purposes or needs of.'" *Ante* at 10 n 6. (Citation omitted.) From that it concludes that these definitions "imply" that the benefit an injured party seeks must be directly caused by

---

(c) Expenses . . . reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed . . . .

4

the injury.  Not only is the majority's reading of § 3105 novel and unprecedented, it flies in the face of our time-honored determination to liberally construe the no-fault act for the benefit of the insured.

The word "for" in the English language has many nuances in its meaning.  I feel confident that the Legislature added § 3107(1)(a) for the purpose of defining "benefits" in § 3105.  On the basis of that belief, I find that the definition of "for" in § 3105 that best accords with the Legislature's intent is "by reason of."  *Random House Webster's College Dictionary* (2001).  Hence, § 3105 should be read to mean that benefits are payable "by reason of" accidental bodily injury.

Reading § 3105 in this way ensures that the only limitations placed on "benefits" for an insured injured in an auto accident are those clearly stated by the Legislature in § 3107.  My belief is that, if the Legislature intended that the sole benefits payable for an insured's injury were those directly arising therefrom, it would have said so.  Also, it would not have required at § 3107 payment for so broad a category as "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

Additionally, the majority's reading of the act is irrational. The majority believes that food provided in the hospital qualifies as a benefit under the act. However, under its reading of § 3105, food would be excluded: the need for it does not arise from the injury. The majority explains that, in an institution, one has little choice what food is served. But it fails to explain how that fact transforms hospital food into an expense arising from an accident.

If the Legislature had intended, for example, that ground beef be compensable only if no other entrée were offered, it should have written something to make that clear. The majority will search in vain for some indication in the act that food, or any item, can qualify for "benefits for an accidental bodily injury" if furnished in the hospital but not at home. Absolutely nothing in either § 3105 or § 3107 allows for that distinction.

The difficulty the majority has in providing a convincing answer to this question illustrates the weakness of its conclusion. Its reading of § 3105 is, at its foundation, unsound. The majority criticizes my analysis of § 3105(1) as inadequate and "undeveloped." *Ante* at 12, n 7. It would be inadequate only if I agreed with the majority's choice to create two requirements where there is

only one in § 3105.  I have taken my own analysis of §
3105(1) to its logical conclusion.  It is not the same
analysis as the majority's, but it is more faithful to the
text of the statute.  Contrary to Justice Corrigan's
belief, I have set forth a  principled basis for my
analysis.  It includes a plain-language reading of §§
3105(1) and 3107(1)(a).

MCL 500.3107(1)(a)

The majority finds that Douglas Griffith fails to
qualify not only under § 3105(1) but also under §
3107(1)(a).  In construing § 3107(1)(a), first it goes to
the dictionary to interpret the meaning of "care."

As is frequently the case, here a dictionary alone
does not clarify the Legislature's intent.  "Care" has
several definitions.  The majority chooses "protection" or
"charge" as the appropriate one.  But the word can also be
defined as "the provision of what is necessary for the
welfare and protection of someone or something." *Compact
Oxford English Dictionary.*

It is clear that, when consulting a dictionary in
performance of the interpretative task, one is normally
required to make a choice among several definitions.  It is
nothing less than a pretense to maintain that, in enforcing

7

a statute "as written," a court does not make definitional choices.

The language of § 3107(1)(a) is broad. Yet, the majority ultimately limits the meaning of "care" to the care needed for recovery and rehabilitation, ascribing to it a restorative meaning. The logical consequence of using this restrictive definition demonstrates that it is poorly chosen. It reads "care" out of the sentence. Given that "recovery and rehabilitation" are in the sentence with "care," the effect of the majority's choice of definitions turns "care" into a mere redundancy. This approach violates our obligation when interpreting statutes to try to give every word meaning and treat no word as surplusage. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).

My reading of the statute gives independent meaning to the word "care." Under the doctrine of *noscitur a sociis*, the meaning of questionable words may be ascertained by reference to the meaning of other words associated with it. Applying this doctrine, "care" fits with "recovery" and "rehabilitation" when "care" is interpreted broadly to mean "the provision of what is necessary for the welfare and protection of someone." The Legislature intended that an

8

injured person's needs be furnished ("care") until "recovery" has been accomplished through "rehabilitation."

In some cases, such as where a motorist is catastrophically injured, recovery and rehabilitation may not be an achievable goal. In these cases, the Legislature requires that the injured individual receive all products and services reasonably necessary for his or her continuing care. The act's comprehensive language demonstrates the Legislature's intent to ensure that benefits are provided in every instance where a motorist suffers injury.

### THE LEGISLATURE'S INTENTION WITH RESPECT TO FOOD

It is difficult to deny that food is a product reasonably necessary for the care of an invalid, however narrowly "care" is defined. Without nourishment, an injured person could not be restored to health and could not properly be cared for. In fact, without it, a person's physical well-being would be immediately threatened. A finding that food is necessary for "care" accords with the purpose of the no-fault act: to provide benefits needed by someone injured in an automobile accident.

There is a limitation on those benefits in the act: all benefits reasonably necessary. Given the wide variety of circumstances under which injured parties seek no-fault benefits, the act provides for wide latitude in determining

9

what benefits are reasonably necessary in a given situation. Unfortunately, the majority limits the wide latitude provided by the Legislature by restrictively reading the word "care."

It is noteworthy that the Legislature did not expressly limit the expenses recoverable in no-fault cases to those that the injured person did not require before the injury. It could have included, but did not, a clause such as "benefits are payable except for those that were reasonably necessary for the care of the person before the injury." It is the majority, not the Legislature, that writes this limitation into the act.

The majority concludes that food is not necessary for the care of Mr. Griffith because he requires food, injured or not. It adds that food has nothing to do with an injured party's "care, recovery, or rehabilitation." It further reasons that food is not an allowable expense when consumed in the home, although it is an allowable expense in an institution.[4]

---

[4] The majority claims a distinction exists where an injured person is required to eat hospital food because his or her injuries require treatment in a hospital. This ignores the closely related situation presented in this case. A catastrophically injured individual remains injured and continues to require institutional treatment, but does not necessarily require the treatment in a hospital or long-term care facility.

This is not a reasonable construction of the statutory language. Nothing in the language of the no-fault act indicates that whether a home-based expense is allowable depends on whether an uninjured person has the same expense. The act's language mandates that the appropriate question is whether the injured person reasonably incurred the questioned expense as part of his or her care, recovery, or rehabilitation.

The logic in the majority's reasoning is, charitably speaking, illusory. If an automobile accident victim is hospitalized, the reasonable cost of his or her food is a covered expense under § 3107(1)(a). If another automobile accident victim requires the same care, but receives it at home, the reasonable cost of his or her food likewise should be a covered expense under § 3107(1)(a).

I agree with Justice Boyle's partial concurrence in *Manley v Detroit Automobile Inter-Ins Exch*,[5] and the Court of Appeals decision in *Reed*: no principled distinction justifies a holding that, where a patient is institutionalized, food is a reasonably necessary expense, but if he or she is home receiving the same care, it is not. Moreover, the plain language of the no-fault act makes no such distinction.

---

[5] 425 Mich 140, 168; 388 NW2d 216 (1986).

11

The majority claims that its ruling is necessary to keep down the cost of no-fault insurance. However, the record contains no evidence to support that claim. There is nothing to indicate that no-fault insurance has become unaffordable because of in-home food expenses that insurers until now have been required to provide to catastrophically injured policyholders.[6]

The facts of Mr. Griffith's case illustrate the complexity of the issue before us and why the Legislature could not have intended the interpretation made by the majority. Mr. Griffith is receiving one hundred percent institutional care, albeit in a home setting. He resides in his own home and is being cared for solely by medical

---

[6] The majority claims that my interpretation of the statute is based on policy considerations. But, in this case, I base my interpretation on the language found in the no-fault act. The Legislature has already made the policy decision. My construction of the statute is in accordance with that decision. Nonetheless, policy considerations are frequently appropriate. Certainly, the decision in this case has numerous policy implications. For example, the majority appears concerned that no-fault costs be kept low. This is a policy concern. In that regard, I fail to see why my interpretation of the law, which has prevailed at least since 1993, would increase current no-fault premiums. One would expect that no-fault providers have been factoring the potential for these costs into their premiums for years. Perhaps this state's drivers can expect that their premiums will decrease in response to the majority's opinion today. After all, Michigan drivers will no longer be entitled to the same level of benefits that they have paid for in premiums during the past twelve years.

professionals, his wife having been placed in a nursing home.

Thus, family members play no role in cooking for Douglas Griffith or in providing his food. There is no evidence that his meals differ in any respect from those he earlier received in the hospital. Because food in both settings is necessary for his care, both should be compensable under the act.

The only distinction between Mr. Griffith's hospital care and his in-home care is the location at which he receives it. The language of the no-fault act does not limit expenses only to those incurred in a hospital setting. This is a new rule created by the Court.

The majority attempts to buttress its interpretation by asserting that it has discerned the policy choice made by the Legislature. It insists that my reading is my own policy choice that cannot be accurate unless the Legislature amends the no-fault act. This is a logical fallacy that assumes the majority's conclusion as its premise.

Also faulty is the majority's assertion that my reading of the statute "essentially invent[s] a new entitlement system." *Ante* at 19 n 13. To the contrary, my

13

reading of the statute conforms with the law as interpreted for at least the past twelve years.

The Court of Appeals made the same application. While the majority's accusations and appeal to cost concerns create a rhetorical flourish, it is the majority, and not I, that advocates a drastic change in established law.

Let there be no mistake in this: motorists, required to purchase no-fault insurance in order to drive in Michigan, now have one less resource available to them because of the majority's restrictive reading of the no-fault act. The majority holds that food, as a matter of law, is never reasonably necessary for one's care, recovery, or rehabilitation outside a hospital.

A proper reading of the text belies the majority's conclusions. There is no need to require the Legislature to amend its decision that all expenses should be covered as long as reasonably necessary to an injured person's care, recovery, and rehabilitation.

FURTHER IMPLICATIONS OF THE MAJORITY'S DECISION

The majority forces a harsh dilemma on insured individuals injured in automobile accidents: remain in an institution, if insurance coverage is available, or convalesce at home where they or others are burdened with the cost of their food. Unfortunately for impoverished

14

families, the only choice may be to remain in institutional care.[7]

*Reed* has been the rule of law in Michigan for twelve years. There are unacknowledged alarming implications in overruling it. If we apply the majority's reasoning about in-home food, is shelter at home an allowable expense? An uninjured person requires shelter. The majority incentivizes no-fault insurers to refuse to reimburse these and other expenses in the future, even though they are without dispute reasonably necessary for an injured person's care.

The majority opines that reimbursement for in-home food is a form of wage-loss benefits. However, it is unable to substantiate that statement with a showing that any legislation equates wage-loss benefits with payment for care of the injured. Wage-loss benefits exist to replace lost income, not as reimbursement for expenses incurred.

Furthermore, the no-fault act limits wage-loss benefits to three years. But the insurer's obligation to provide for the care of an injured person can extend over

---

[7] Interestingly, although the majority expresses its concern that costs for insurers be minimized, its decision arguably helps to increase those costs. In the future, the care of patients who remain institutionalized during the period they once might have returned home is likely to be more expensive.

the person's lifetime. Therefore, equating the provision of food with wage loss is inaccurate. The Legislature struck a very definite compromise on the duration of wage-loss benefits that stands in contrast to the lifetime care to which an injured person is entitled.

The majority[8] finds that §§ 3105 and 3107 "impose two separate and distinct requirements" before expenses are compensable under the act. It finds that Mr. Griffith's expenses for in-home food fail to satisfy the requirements of both sections. They fail to satisfy § 3107 because they were not necessary for his care. They fail to satisfy § 3105 because they were not caused by the accidental bodily injury.

The majority informs us that Mr. Griffith's food, when provided in the hospital, did satisfy § 3107. Are we to infer that the hospital food was nonetheless not a reimbursable expense because it did not satisfy § 3105?[9]

---

[8] *Ante* at 9.

[9] After quoting both statutory provisions relevant to the present analysis, the majority concludes that hospital food remains a covered expense. But merely quoting the statutory language does not resolve the question.

According to the majority, an injured person's food is not "for" an accidental bodily injury because the need for food was not caused by the automobile accident. By the majority's logic, even one who is hospitalized is not entitled to food expenses because those expenses are as
Footnotes continued on following page.

16

Clearly, the food was not an expense caused by the accidental bodily injury when furnished either in the hospital or at home.

Finally, the majority makes no provision for those who in the past have incurred ongoing expenses and assumed ongoing burdens in reliance on the availability of reimbursements for in-home food. Because its holding is not limited to new cases, many whose caregivers are already receiving reimbursement for in-home food may be forced to return to institutional settings.

## CONCLUSION

The majority's conclusion is that food is unnecessary to one's "care, recovery, or rehabilitation" outside an institution, although necessary inside an institution. It makes a distinction without a difference. Not only is it illogical, no statutory basis exists to distinguish the

necessary to an uninjured person as to an injured person. This logic is equally applicable regardless of the injured person's physical location.

Contrary to the majority's assertion, I do not express policy concerns about allowing recovery for food expenses in a hospital, but not for the same costs at home. Rather, my concern is the lack of a logical basis for the distinction the majority seeks to create. Instead of the majority's artificial distinction, I would apply the clear language of § 3107(1)(a) and allow recovery for products reasonably necessary to "an injured person's care, recovery, or rehabilitation." I would not decide, as the majority does, that as a matter of law at-home food expenses are never reasonably necessary to one's care, recovery, or rehabilitation.

17

reimbursability of the cost of institutional food from the reimbursability of the cost of in-home food.

I would affirm the trial court and the Court of Appeals decisions and leave *Reed* intact. Regardless of the choice of meanings ascribed to the word "care," the Legislature's intent had to be that food is an allowable expense for injured automobile accident victims convalescing at home.

> Marilyn Kelly
> Michael F. Cavanagh